IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| LUCILLE LANGFORD, | ) | Civil Action No. 3:03-0192-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On February 4, 2000, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held June 28, 2001, at which Plaintiff appeared and testified, the ALJ issued a decision dated September 3, 2002, denying benefits. The decision of the ALJ became the final decision of the Commissioner and Plaintiff brought this action in this Court. On March 19, 2003, upon motion of the Commissioner and consent of the Plaintiff, this action was remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative action because the cassette tape of the oral hearing contained too many inaudible statements.

Plaintiff attended a second ALJ hearing on August 23, 2005. The ALJ issued a decision on March 2, 2006, finding that Plaintiff was not disabled because she was able to perform her past relevant work as a security guard and a snack bar worker/owner.

Plaintiff was fifty-five years old at the time she alleges she became disabled. She has a limited education, sixth-grade or more, and past relevant work as a security guard and in a family-owned snack bar. Plaintiff alleges disability since December 18, 1998, due to back pain, headaches, arthritis and depression.

The ALJ found (Tr. 12-16):

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2001. (See Exhibits 2A and 7D).

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b)).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spines and headaches (20 CFR 404.1520(c)).

4. The claimant also had the following non-severe impairments through her date last insured: hypertension, anxiety, and depression.

5. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant retained the residual functional capacity to perform a wide range of semi-skilled light work with the following restrictions: no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no pushing or pulling over 50 pounds; no standing and/or walking over 6 hours in an 8-hour workday; occasionally stooping, twisting, crouching, kneeling, and climbing of stairs and/or ramps; no climbing of ladders or scaffolds; no repetitive bending or prolonged extension of cervical spine; and

>    no significant manipulative, visual, communicative, environmental and/or mental restrictions.
>
> 7. Through the date last insured the claimant's past relevant work as a snack bar worker/owner and security guard did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through September 30, 2001 (See Exhibits 2A and 7D), the date last insured (20 CFR 404.1520(f)).

On August 11, 2007, the Appeals Council denied Plaintiff's request for review and the decision of the ALJ became final.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff was treated at the Laurens County Hospital Emergency room for injuries from an automobile accident on December 18, 1998. Tr. 184-189. A CT scan of Plaintiff's cervical spine revealed normal alignment with no evidence of a fracture or dislocation. Tr. 191. Plaintiff was

3

diagnosed with a contusion to her head and cervical muscle strain; she was prescribed Motrin and Flexeril, and discharged to her home. Tr. 185-186.

On December 29, 1998, Dr. David Sanders examined Plaintiff and diagnosed her with headache, head injury, neck strain, and hypertension. Tr. 232. Plaintiff was examined by Dr. Michael Bryant, a family practitioner, on January 8, 1999. He noted that Plaintiff had mild tenderness in her paraspinous muscles with a good range of motion. Dr. Bryant diagnosed Plaintiff with hypertension and prescribed blood pressure medication, pain, and sleep medications. Tr. 231. Plaintiff complained of continued headaches and achiness across her shoulders and back on January 23, 1999. Her blood pressure was elevated. Tr. 230. On January 29, 1999, Plaintiff's blood pressure was noted to be improved, she reported minimal improvement in her headaches, and complained of not resting well at night. Tr. 229.

Dr. John D. Steichen, a neurosurgeon, examined Plaintiff for complaints of neck stiffness, constant and severe headaches, and low back pain on January 26, 1999. Examination revealed that Plaintiff had full range of motion of her neck and dorsal and lumbar spines, she had no tenderness, and she had no observed paraspinal spasms. Dr. Steichen gave Plaintiff samples of Skelaxin and recommended that she schedule an MRI of her cervical and lumbar spines. He recommended medical management, physical therapy, and neuromedical consultation. Tr. 201-202.

An MRI on February 1, 1999 revealed central protrusion of disc material at the C5-6 and C6-7 levels with sparing of the neural foramina. A lumbar MRI revealed mild bulging of disc material at L4-5 with mild compromise of the neural foramina. Tr. 200.

On February 3, 1999, Plaintiff underwent electrodiagnostic testing which revealed normal conduction in her upper and lower extremities. Tr. 218. On February 3, 1999, Dr. Wayne B. Siad,

4

a neurologist, examined Plaintiff. Plaintiff complained of difficulty looking to the right, a dull headache, lumbar pain, insomnia, and recent numbness in his hand. Tr. 215. Dr. Sida diagnosed Plaintiff as having post-concussive syndrome with whiplash type cervical spine injury. He noted that Plaintiff had 5/5 strength, intact sensation, normal coordination and gait, and slightly diminished right biceps compared to her left biceps. Dr. Sida opined that Plaintiff's hand numbness might be carpal tunnel syndrome and suggested possible C6 radiculopathy. Dr. Sida prescribed Pamelor (antidepressant) and Midrin for headaches. He gave Plaintiff a work excuse for the day. Tr. 215-218.

On February 9, 1999, electrodiagnostic testing were normal, with needle examination of the right cervical paraspinals revealing complex repetitive discharges. Tr. 212-214. On February 26, 1999, Dr. Steichen wrote that, given the absence of significant neural compression, he thought that Plaintiff's neck and low back pain were largely related to mechanical factors. He recommended an ongoing stretching program and the use of anti-inflammatory medications and muscle relaxants. Tr. 199.

Dr. Sida examined Plaintiff for complaints of pain and daily headaches on April 12, 1999. He diagnosed post-traumatic headaches, which he thought might be tension and rebound headaches. He increased Plaintiff's prescription for Pamelor and suggested adding Depakote (a headache suppressant) if her symptoms did not improve. Tr. 210.

On April 23, 1999, Dr. Steichen wrote that although an MRI demonstrated small bulging discs, there was not apparent significant neural compression. He noted that electrodiagnostic studies revealed chronic, indeterminate site, cervical radiculopathy. Dr. Steichen could not make a

correlation between the radiographic images and Plaintiff's clinical signs and symptoms. He recommended trying cervical epidural steroids and to consider surgery as a last option. Tr. 198.

Dr. Kevin W. Kopera conducted an occupational medicine evaluation of Plaintiff on May 26, 1999. He thought that Plaintiff's reported headaches were most consistent with muscle tension headaches. Dr. Kopera did not consider Plaintiff to be a candidate for surgery and recommended conservative pain management. He opined that Plaintiff should be employable, she had a ten percent impairment to the cervical thoracic spine, and she should not perform repetitive bending or prolonged extension of her cervical spine. Tr. 195-197.

Dr. Sida diagnosed Plaintiff with post-traumatic tension headaches and noted he could not rule out depression on June 7, 1999. Tr. 209. On June 29, 1999, Plaintiff was examined by Dr. Steichen for neck pain which was more severe on the right. Dr. Steichen stated that there was no neural compression and that Plaintiff's neurological examination was stable. Dr. Sida advised against surgical intervention. Tr. 194. On August 2, 1999, Dr. Steichen noted that Plaintiff continued to complain of headaches, looked depressed, and had normal reflexes and gait. Dr. Sida diagnosed Plaintiff with post-traumatic tension headaches, not ruling out depressive headaches. He prescribed Pamelor and Depakote. Tr. 208.

On September 14, 1999, Dr. Sida opined that Plaintiff probably had spondylosis of her cervical spine prior to her accident and suggested that the accident exacerbated her spondylosis. Plaintiff reported that she experienced chronic neck pain and headaches. He performed an ethyl chloride stretch and spray technique to Plaintiff's right trapezius muscle which produced good muscle release. Tr. 207. On November 9, 1999, Plaintiff reported that she had stopped taking

Pamelor and Depakote because she felt they were not helping her. Dr. Sida gave Plaintiff samples of Imitrex on the off chance that her headaches were a variant of a migraine. Tr. 206.

Dr. Bryant examined Plaintiff on February 1, 2000 for persistent elevation of her blood pressure. She reported that she had headaches since the December 1998 car accident, she had a bulging disc in her neck with some arthritis, and she was not taking her prescribed medicines because she could not afford them. In response to her question of whether she should apply for disability, Dr. Bryant told Plaintiff it was not a good idea because she had not maximized her medical treatment. He recommended that Plaintiff stop chewing gum because she had probable temporomandibular joint tenderness and inflammation. Tr. 228. On February 21, 2000, Dr. Bryant diagnosed Plaintiff with headaches, hypertension, degenerative arthritis, and depression and he gave her medication samples. Tr. 227.

On March 13, 2000, Plaintiff complained of headaches and swelling around her eyes. Dr. Sida noted that Plaintiff looked depressed and could be experiencing psycho-physiologic manifestations of her underlying depression, opined that it was increasingly difficult for him to attribute her headaches to an injury that occurred a year earlier, diagnosed depressive headaches, noted that Plaintiff had been non-compliant with recommended prescriptions in the past, and prescribed an antidepressant to help her headaches. Tr. 205.

Dr. Bryant wrote that Plaintiff looked more relaxed on April 10, 2000. Her blood pressure was much improved. Physical examination revealed fairly improved ROM of Plaintiff's neck with minimal tightness and no reproducible discomfort. Plaintiff complained that she was not sleeping well. Dr. Bryant noted that Plaintiff was pursuing Social Security disability benefits. Tr. 226.

7

On April 27, 2000, Dr. Spurgeon Cole, Ph.D., performed a consultative psychological examination. He noted that Plaintiff was oriented, her speech was relevant and coherent, she had logical and goal-directed thought processes, she had satisfactory judgment, and she had satisfactory reasoning abilities with good insight. Plaintiff reported that she had difficulty sleeping, a fair appetite, and low energy. Dr. Cole opined that Plaintiff had mild to moderately impaired concentration, although she stayed adequately focused during the evaluation. Plaintiff reported that she cooked, cleaned, washed clothes, shopped at the grocery store with her husband, paid bills, balanced her checkbook, occasionally went shopping, occasionally took a trip, went out to eat, talked on the telephone, sewed, watched television, and read magazines. Dr. Cole diagnosed Plaintiff with mild to moderate generalized anxiety. Tr. 271-272.

On May 12, 2000, Dr. Bryant treated Plaintiff for sinus congestion. He noted that she was doing relatively well on blood pressure medication and appeared a little bit more emotionally stable than she was in the past. Tr. 225. On August 23, 2000, Dr. Bryant reported that Plaintiff's blood work was great, her blood pressure was great, and her neck was reportedly feeling good. Tr. 223.

On March 15, 2001, Dr. Bryant completed a residual functional capacity assessment form in which he opined that Plaintiff could lift and/or carry a maximum of ten pounds; stand and/or walk a total of less than two hours per day; could never climb or crawl; could occasionally balance, stoop, kneel, and crouch; had unlimited ability to finger, feel, see, hear, and speak; and had limited ability to reach and handle. He based these limitations on Plaintiff's severe osteoarthritis in her neck and back causing day to day pain. Dr. Bryant wrote that her activities of daily living were a chore for her, and her pain affected her blood pressure. He opined that Plaintiff's ability to maintain

8

concentration and attention was limited due to pain. Impaired capacity was based on decreased range of motion of her neck, mild crepitus, and x-ray findings. Tr. 268-270.

On December 21, 2001, Dr. Bryant diagnosed Plaintiff with hypertension, arthritis, and sinus pain. Tr. 290. On March 27, 2003, Dr. Bryant wrote:

> [Plaintiff] has been disabled for quite some time with degenerative spine disease especially in the cervical and lumbar area, so bad that she cannot even hold her arms up to do any menial task around the house. She has documented disease as far back as May of 2001 with degenerative disease of the spine. Please refer to MRI report. I have for quite a while considered her disabled from meaningful employment secondary to her disease. We have tried multiple medications and physical therapy and had her evaluated with the surgeons without any significant relief. She has a comorbidity of hypertension, headaches, and high cholesterol. Oftentimes she comes in out of control because she cannot afford her medicines. She has decreased range of motion in her neck. She has decreased strength in the upper extremities and cannot bend at the waist to touch her toes. She does walk and barely takes care of her ADLs at home.

Tr. 283. On April 15, 2003, Dr. Bryant opined that Plaintiff had been permanently and totally disabled since May 2001, based on non-surgical disease of the cervical and lumbosacral spine which caused chronic pain syndrome. Tr. 282.

Plaintiff alleges that the ALJ: (1) erred in failing to discuss numerous reports of Plaintiff's treating physician; (2) failed to give proper weight to the treating physician's opinion; (3) failed to set out the rationale for Plaintiff's residual functional capacity ("RFC") as required by SSR 96-8p; (4) failed to properly evaluate Plaintiff's pain; and (5) made statements at the hearing which indicated she evaluated the case under erroneous legal standards. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[1]

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence
>                                                                    (continued...)

A.   Pain/Credibility

Plaintiff alleges that the ALJ erred in failing to evaluate her pain in other than a conclusory manner, in violation of SSR 96-7p. She further alleges that the ALJ failed to discuss the two-part test for the evaluation of pain. The Commissioner contends that the ALJ properly considered the record as a whole in determining that Plaintiff's statement were not entirely credible.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

---

[1](...continued)
   but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision to discount Plaintiff's credibility during the relevant time period is not supported by substantial evidence and correct under controlling law. Here, the ALJ merely stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

Tr. 16. It is unclear from the ALJ's opinion as to why she discounted Plaintiff's pain and credibility.

### B. Treating Physician

Plaintiff alleges that the ALJ erred in failing to properly evaluate the opinions of her treating physician, Dr. Bryant. In particular, Plaintiff claims that the ALJ erred by failing to even consider the March 2001 RFC assessment of Dr. Bryant in which he opined that she lacked the capacity to even perform the full range of sedentary work. The Commissioner contends that the ALJ properly rejected Dr. Bryant's April 15, 2003 opinion that Plaintiff had been permanently disabled since May 2001 and his treatment notes do not support his March 2001 RFC assessment.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

11

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount the opinion of Plaintiff's treating physician (Dr. Bryant) is not supported by substantial evidence. The ALJ failed to properly consider all of the evidence from Dr. Bryant. In particular, she failed to consider the RFC assessment completed by Dr. Bryant on March 15, 2001. Tr. 268-270. In the assessment, Dr. Bryant opines that Plaintiff has the capacity to perform less than sedentary work.[2] The ALJ discounted Dr. Bryant's April 15, 2003 opinion that Plaintiff was permanently and totally disabled since May of 2001 because she found it was not supported by medially acceptable clinical findings and laboratory diagnostic techniques, was given approximately two years after the date Dr. Bryant stated Plaintiff became disabled, and was inconsistent with other substantial evidence. Tr. 16. The ALJ's opinion, however, fails to take into account that Dr. Bryant found that Plaintiff had the capacity to perform less than sedentary work because of her severe arthritis and spasms in her neck as of March 15, 2001. Tr. 268. In his March 2003 letter, Dr. Bryant references Plaintiff's MRI report and notes that Plaintiff has decreased range of motion in her neck and decreased strength in her upper extremities. Tr. 283. As noted above, MRIs indicated that Plaintiff had central protrusion of disc material at C-6 and C6-7 and mild

---

[2] As the ALJ failed to consider this RFC evaluation by Dr. Bryant, it appears that the ALJ's RFC evaluation was also incomplete.

12

bulging of disc material at L4-5 with mild compromise of the neural foramina. Tr. 200. In April 1999, Dr. Steichen noted that electrodiagnostic studies revealed chronic, indeterminate site, cervical radiculopathy. Tr. 198.

## CONCLUSION

Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose. " Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). In such a case, an adverse decision on remand could not "withstand judicial review," therefore, reversal is appropriate without the additional step of directing that the case be remanded to the Commissioner. See also Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). It is, therefore,

RECOMMENDED that the Commissioner's decision to deny benefits be reversed and this action be remanded to the Commissioner for an award of benefits.

                                       Respectfully submitted,

                                       s/Joseph R. McCrorey
                                       United States Magistrate Judge

August 12, 2008
Columbia, South Carolina